UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**PAUL PIETRZAK,**

**Plaintiff,**

                                          Case No. 1:18-cv-00897-TPK

v,

**COMMISSIONER OF SOCIAL**              **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

Plaintiff Paul Pietrzak filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on September 18, 2018, denied Mr. Pietrzak's applications for disability insurance benefits and for supplemental security income. Mr. Pietrzak has now moved for judgment on the pleadings (Doc. 15) and the Commissioner has filed a similar motion (Doc. 20). For the following reasons, the Court will **DENY** the Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Defendant Commissioner.

## I.  BACKGROUND

Plaintiff's applications for disability benefits and for supplemental security income were filed on July 15, 2014. In both applications, he alleged that he became disabled on November 1, 2004, primarily due to epilepsy, high blood pressure, diabetes, and a left hand tremor. He was 48 years old at the time his applications were filed.

After initial administrative denials of his claim, Plaintiff appeared and testified at an administrative hearing held on July 12, 2017. A vocational expert, Ms. Hall, also testified at the hearing.

The Administrative Law Judge issued an unfavorable decision on October 4, 2017. He concluded that Plaintiff had not worked since his alleged onset date and that he suffered from severe impairments including epilepsy, hypertension, and carpal tunnel syndrome. According to the ALJ, even with these impairments Plaintiff could work at all exertional levels except that he could frequently, rather than constantly, finger and handle bilaterally. However, he had non-exertional limitations which precluded him from being exposed to unprotected heights or dangerous machinery and from interacting more than occasionally with the public.

Ms. Hall, the vocational expert, was asked whether a person with these limitations could do either Plaintiff's past work as a cashier or any other jobs. She testified that the cashier job could not be done by someone who was limited in his ability to interact with the public, but that such a person could work at the medium exertional level doing unskilled jobs like laundry laborer and warehouse worker. She also said that these jobs existed in significant numbers in the national economy. The ALJ accepted this testimony and found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, asserts that there are two reasons for reversing the ALJ's decision and remanding the case. He argues, first, that the ALJ applied an improper medical opinion to the issue of disability because he did not develop the record, particularly as it relates to Plaintiff's mental health treatment. Second, he contends that the ALJ's residual functional capacity finding was erroneous because it did not properly account for his reduced manipulation ability.

## II. THE KEY EVIDENCE

The key evidence in this case includes both the medical records and Plaintiff's testimony. The Court will summarize the relevant portions of each.

Plaintiff testified at the administrative hearing that he had done both college and post-graduate work. At the time of the hearing, he was living with his parents and receiving food stamps and medicaid. His past work was as a manager/cashier, a job he had not performed since 2004.

In terms of what was preventing him from working, he said that he got numbness in his hands and fluid in his legs from his diabetes. He had some symptoms from high blood pressure as well, and suffered from recurring seizures. Additionally, he had tremors in his hands all day, every day, and also had jerking in his hands and arms, which he believed to be a side effect of his seizures. Plaintiff was seeing an epilepsy counselor for anxiety.

Plaintiff testified that he had no problems sitting, standing, or walking. On a daily basis, he took medications, watched television, and went to medical appointments. He described feelings of worthlessness but understood that he needed to take care of his health conditions.

In response to questioning from his attorney, Plaintiff said that his tremors were constant and that he had some difficulty with activities like zipping zippers or buttoning buttons. He tried not to lift things because of the shaking in his hands and the fear that he would drop things. He also stated that his epilepsy counselor was Todd Greco and that he had been seeing him once a month for six years. His anxiety led to some social withdrawal.

Most of the vocational expert's testimony is described above. In addition to identifying jobs which could be performed by someone with the residual functional capacity described by the ALJ, however, she said that someone who could only occasionally use his hands for fingering and

handling could not do either of the two medium jobs which the expert listed. However, that person could do the light exertional job of usher, with 25,000 such jobs existing in the national economy, or could work as a tanning salon attendant, with 18,000 of those jobs existing nationally.

Pertinent medical records show the following. According to a 2013 report from Elmwood Health Center, Plaintiff carried multiple diagnoses including high blood pressure and high cholesterol, diabetes, a seizure disorder, and depression. He had not had a full-blown seizure in several years but did report myoclonic hand jerks and tremors. (Tr. 263). The same complaint is noted in a subsequent 2013 record (Tr. 289) and again in 2014 (Tr. 350), 2015 (Tr. 505), 2016 (Tr. 495), and 2017 (Tr. 463). When undergoing a physical examination in 2016, however, Plaintiff said that he had no complaints and no current medical or emotional problems, (Tr. 428), and at a prior office visit that year said he had no new symptoms other than some tingling over his thumb and index finger which was seen as consistent with carpal tunnel syndrome (Tr. 493).

In 2014, Plaintiff underwent a consultative physical examination performed by Dr. Liu. Plaintiff reported that he had been hospitalized in 2008 and again in 2010 for seizures. His activities of daily living included cooking, cleaning, laundry, and shopping. He also watched television, listened to the radio, read books, and visited with friends. On examination, he demonstrated a bilateral hand tremor but his hand and finger dexterity and grip strength were normal. The only limitation suggested by Dr. Liu was avoiding heights and heavy machinery. (Tr. 344-47).

A psychiatric evaluation was also done by a consultative examiner, Dr. Santarpia, who is a psychologist. She noted that Plaintiff had been hospitalized in 1980 and 1991 due to psychological issues and that he had been receiving treatment since at least 1982. At the time of the evaluation, he was seeing a counselor one time per month. The only psychological symptoms he reported were due to anxiety. His memory, concentration, and attention were intact. Dr. Santarpia concluded that he could both relate adequately to others and deal with stress within normal limits. However, she viewed his prognosis as only fair. (Tr. 353-56).

From a mental health standpoint, the first relevant record is a report from Mr. Greco dated September 17, 2014. He stated in that letter that Plaintiff had been associated with his agency since 1988 due to his seizure disorder and depression. He indicated Plaintiff also had learning difficulties. Based on Plaintiff's inability to deal with the stress of being around others and not knowing when he would have a seizure, Mr. Greco concluded that Plaintiff could not maintain employment. (Tr. 341). He said much the same in a 2017 letter, citing not only Plaintiff's anxiety about when he might have a seizure but the fact that he had gastrointestinal problems and worried about getting to the bathroom on time. (Tr. 555). Additionally, Ms. Reddington, a nurse practitioner, provided an opinion to the effect that Plaintiff could not work at any job involving the use of his hands or arms and that his anxiety was severe enough that it interfered with his ability to interact well with others. (Tr. 556). There do not appear to be any treatment notes from Mr. Greco after 2014 even though Plaintiff testified that he sought counseling on a monthly basis.

## III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

### A. Failure to Develop the Record

Plaintiff first argues that the ALJ did not properly evaluate his mental impairment and that it should have been found to be severe. The primary basis of this argument appears to be the assertion that the ALJ did not properly develop the record due the gap in Mr. Greco's treatment records. In response, the Commissioner relies on this Court's decision in *Vay v. Comm'r of Social Security*, 382 F.Supp.3d 267 (W.D.N.Y. 2018) as support for the proposition that, under similar circumstances, the ALJ did not err in failing to obtain treatment notes from a counselor and in discounting that counselor's opinion on the question of disability. It will be helpful, in discussing this issue, to set out in some detail how the ALJ reached his conclusion that Plaintiff's mental impairment was not particularly limiting - and certainly not limiting enough to impact his ability to work at the medium unskilled jobs identified by the vocational expert.

The ALJ determined that Plaintiff had no severe mental impairment, basing that decision on the fact that Plaintiff did not allege any disability arising from a mental impairment and that the examination by Dr. Santarpia was almost entirely normal. That was the same conclusion reached by the state agency psychological consultant. He gave Mr. Greco's opinions little weight because they were unsupported by the record, did not include treatment notes, and because it was unreasonable for Plaintiff to be anxious about having a seizure since he had not had one since 2011. (Tr. 15). He also rejected that portion of Ms. Reddington's opinion dealing with mental limitations because he had already decided that Plaintiff had no severe mental impairment. When determining Plaintiff's residual functional capacity, however, the ALJ did include a restriction on more than occasional interaction with coworkers. It is true, as Plaintiff asserts, that the lack of treatment notes from Mr. Greco was one of several reasons given by the ALJ for discounting his opinion and that it does not appear that the ALJ attempted to obtain the missing treatment records. It is also true that Plaintiff's attorney did not ask the ALJ to do so, or for more time to supplement the record with those notes, even though he did make other requests at the end of the administrative hearing. (Tr. 44-46).

Because the Commissioner places great reliance on the *Vay* decision, the Court will begin its discussion there. In *Vay*, the Court began with this description of the ALJ's duty to develop the record:

> "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill,* No. 17 Civ. 5392 (GBD) (KHP), 2018 WL 6061206, at *2, 2018 U.S. Dist. LEXIS 197904, at *5 (S.D.N.Y. Nov. 20, 2018). The ALJ's duty to develop the record applies to both pro se and represented parties, and is heightened in the case of pro se plaintiffs." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5, 2018 U.S. Dist. LEXIS 186600, at *11 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information ...." *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

*Vay v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 267, 272–73 (W.D.N.Y. 2018).

Turning to the question of whether the ALJ in that case failed in this duty, the Court noted that as part of satisfying that duty, the ALJ had ordered consultative examinations. There was also an extensive amount of evidence in the record from the time

period in question, all of which shed light on the claimant's functioning and which supported the ALJ's evaluation of the claimant's condition and abilities. Also, there appeared to be a very limited amount of additional evidence which the ALJ could have obtained had he attempted to do so. The *Vay* court noted that the ALJ had asked the Plaintiff's mother for additional evidence, and she submitted some information after the hearing. Finally, the Court pointed out that the source whose notes were not obtained was not an acceptable medical source and her opinion was therefore not entitled to be accorded controlling weight. It is also significant that the claimant in that case was not represented by counsel at the hearing, a fact which imposed a heightened duty on the ALJ to develop the record.

Some, but not all, of these elements are present here. Like the source in *Vay*, Mr. Greco is not an acceptable medical source and his opinion was not entitled to any special deference. Also, there is some (but not an extensive amount) of other evidence from the relevant time frame which addresses Plaintiff's mental state. The ALJ did have the benefit of a consultative psychiatric evaluation to assist him, and he also was able to consider Plaintiff's testimony. And, unlike the situation in *Vay*, Plaintiff was represented by counsel, who could have either asked the ALJ to obtain additional medical records or to leave the record open so counsel could do so. Neither of those occurred, and counsel's only request, at the conclusion of the hearing, was for another physical examination, not for any additional consideration of Plaintiff's mental impairments. This case therefore falls somewhere between a case like *Vay*, where this Court found that there was no need for further development of the record, and cases like *Gerald L. v. Comm'r of Soc. Sec.*, 2019 WL 4573419, *10 (N.D.N.Y. Sept. 20, 2019) where the court concluded that the ALJ did not properly discharge his duty to develop the record, noting that there was a "complete absence of any records or medical opinions from Plaintiff's alleged treating mental health providers [which] presents an obvious gap in the record, especially in light of sparse record overall."

A remand would be appropriate in a case like this were there any reasonable probability that the missing records might alter the ALJ's decision or if the Court's ability to rely on the reasonableness of the ALJ's decision was significantly undercut. Here, that is not the case. It is reasonable to assume that any counseling notes from Mr. Greco would reflect Plaintiff's subjective complaints of anxiety, but those complaints are detailed in the two reports from Mr. Greco and were discounted by the ALJ for reasons that, for the most part, are unrelated to the absence of treatment notes. The ALJ was not required to give Mr. Greco's opinion any special deference and, as noted, there are records which shed some light on Plaintiff's mental condition from 2014 to 2017, as well as the consultative examination and the state agency reviewer's opinion, all of which support the ALJ's conclusion. Further, to the extent that Plaintiff's anxiety would impact his ability to deal with the public, the ALJ took that limitation into account in his residual functional capacity finding. Under these circumstances, while it would have been helpful for either the ALJ or Plaintiff's counsel to obtain Mr. Greco's treatment notes, the Court cannot conclude that they were necessary in order for the ALJ to make an informed decision, or that they likely would have altered the result in this case. Consequently, the Court

declines Plaintiff's invitation to remand the case on the ground that the ALJ failed in his duty to develop the record.

### B. Hand Tremors

Plaintiff's second argument is that the ALJ mischaracterized the evidence concerning Plaintiff's hand tremors, thus leading to the inaccurate conclusion that he could perform frequent fingering and handling. Had he not done so, Plaintiff argues, the ALJ would have found greater limitations which, in turn, would undercut the ALJ's reliance on the vocational testimony concerning those jobs which Plaintiff was deemed able to perform. The Commissioner, in turn, asserts that the record - including Dr. Liu's examination findings, the findings reported by Ms. Reddington concerning normal hand and finger dexterity and grip strength, and Plaintiff's own testimony - fully supports the ALJ's decision.

When the ALJ evaluated the evidence of physical impairments, he gave great weight to Dr. Liu's consultative examination, which did not indicate any significant physical limitations, but he also accommodated the presence of Plaintiff's hand tremors - noted by Dr. Liu - by restricting to some degree Plaintiff's ability to handle and finger. He gave little weight to Ms. Reddington's opinion because the record did not support her assertion that Plaintiff had significant hand jerks or tremors for more than 50% of the day (something she used to support her conclusion).

The Court sees no reversible error here. The record does include the findings about normal grip strength and dexterity cited by the Commissioner, and Plaintiff did not testify to tremors or jerks severe enough to preclude the use of his hands for more than 50% of the day. Dr. Liu was aware of Plaintiff's hand tremor but did not think that it posed any problems for working. The ALJ was also correct that there was little clinical corroboration of Plaintiff's subjective complaints about the frequency and severity of his tremors or hand jerks, and Plaintiff's testimony indicated that he had difficulty with some types of fine manipulation only in that it took longer than normal to accomplish certain tasks. That, coupled with the fact that the vocational expert identified jobs that Plaintiff could perform even with more significant limitations in his hand functioning, persuades the Court that this claim of error does not support a remand.

### V. CONCLUSION AND ORDER

For the following reasons, the Court **DENIES** Plaintiff's motion for judgment on the pleadings, (Doc. 15), **GRANTS** the Commissioner's motion (Doc. 20), and **DIRECTS** the Clerk to enter judgment in favor of the defendant Commissioner.

                                                 **/s/ Terence P. Kemp**
                                               **United States Magistrate Judge**